IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION


| | |
|---|---|
| MONICA CAMPOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CV. NO. SA-12-CV-00799-DAE |
| ) | |
| INSURANCE & BONDS AGENCY ) | |
| OF TEXAS, LLC, D/B/A IBTX ) | |
| RISK MANAGEMENT SERVICES, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |


ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS

On January 23, 2013, the Court heard Defendant's Motion to Dismiss

("Motion").  Arthur G. Vega, Esq.,  appeared at the hearing on behalf of Monica

Campos ("Plaintiff"); Lea A. Ream, Esq., appeared at the hearing on behalf of

Insurance & Bonds Agency of Texas ("Defendant").  After reviewing the Motion

and the supporting and opposing memoranda, the Court **GRANTS IN PART** and

**DENIES IN PART** Defendant's Motion.  ("Mot.," Doc. # 6.)

BACKGROUND

On August 24, 2011, Plaintiff filed the instant action for recovery pursuant to Title VII of the Civil Rights Act of 1964.  Plaintiff claims that Defendant engaged in unlawful discrimination by subjecting her to harassment, hostile work environment, retaliation, and disparate treatment on the basis of her gender.  ("Compl.," Doc. # 1.)

According to the Complaint, Plaintiff's company, San Antonio Surety Specialists, merged with Defendant in June of 2005.  (Compl. ¶ 10.)  Both Plaintiff's company and Defendant performed insurance-related services.  (Id. ¶¶ 9, 11.)  After the merger, Plaintiff became an employee of Defendant, and was primarily responsible for maintaining San Antonio Surety Specialists' "book of business" by continuing to serve its clients.  (Id. ¶ 14.)  In accordance with the terms of the merger agreement, Plaintiff received an annual salary of $45,000 plus a 50% commission on contract surety bonds issued.  (Id. ¶ 15.)

Plaintiff alleges that from June 2010 until her termination in October 2011, she was subjected to harassment by Joseph Claybourne ("Claybourne"), Defendant's President.  (Id. ¶ 17.)  According to the Complaint, Claybourne's verbal harassment and ridicule created a hostile work environment.  (Id. ¶ 19.)  Plaintiff claims that, at a managerial staff meeting, Claybourne openly and publicly

criticized Plaintiff for making a suggestion regarding Defendant's business model. (Id. ¶ 18.)  When Plaintiff complained about Claybourne's behavior to Robert Nelson ("Nelson") and Bryan Moore ("Moore"), two of Defendant's owners, they advised her not to speak during managerial staff meetings and to avoid confrontations with Claybourne.  (Id. ¶¶ 20–21.)  They warned Plaintiff that Claybourne had a tendency to become hostile and combative when challenged. (Id.)  When Plaintiff attempted to discuss Claybourne's conduct with Nelson on another occasion, Nelson told Plaintiff to "go home and cool off."  (Id. ¶ 22.)

In November 2010, Plaintiff alleges that, while at an offsite managers' meeting, Claybourne yelled at her when she attempted to explain to him what a guest speaker was talking about.  (Id. ¶ 23.)  According to Plaintiff, Claybourne shouted that he knew what the speaker was saying.  (Id.)  Plaintiff claims that she had to go to the women's bathroom because she was almost in tears, and the other managers present were "visibly and noticeably uncomfortable."  (Id.)

Plaintiff asserts that in February 2011, Randy Purvis ("Purvis"), Defendant's Chief Financial Officer, told her that she would no longer be paid for visits to her clients, and she was subsequently denied full payment for a trip to Defendant's Dallas office.  (Id. ¶ 26.)

The Complaint alleges that in June 2011, Moore told Plaintiff that he

did not like the way she dressed or her personality and thought her position in the

company was ridiculous.  (Id. ¶ 24.)  In July 2011, Plaintiff asserts that Purvis

yelled curse words at her in a managers' meeting after she disagreed with him.  (Id.

¶ 25.)  According to Plaintiff, Purvis' conduct made others at the meeting "visibly

and noticeably uncomfortable."  (Id. ¶ 25.)  Plaintiff alleges that Lori Green

("Green"), Defendants' Chief Operating Officer, was present but did nothing to

stop Purvis' "verbal attack."  (Id. ¶ 25.)

        Also in July 2011, Plaintiff claims that Purvis told her that Claybourne

was going to cease paying her commissions.  (Id. ¶ 27.)  Plaintiff alleges that other

male salespeople employed by Defendant did not have their commissions reduced

to 0%.  (Id.)  When Plaintiff asked Green to reconsider the decision to cease paying

her commissions, she alleges that Green advised her not to speak to Claybourne

about it.  (Id. ¶ 30.)

        According to the Complaint, in October 2011 Plaintiff reassigned her

accounts to another employee, Clark Fresher ("Fresher"), since Green, Purvis, and

Claybourne had eliminated Plaintiff's position as a producer.  (Id. ¶ 32.)  Plaintiff

claims that she discussed the reassignment with Moore but "he was not interested

in the topic and ignored [her]."  (Id. ¶ 31.)  After the reassignment, Green informed

Plaintiff that she was being terminated for "unethical business conduct" associated

with the reassignment.  (Id. ¶ 32.)  When Plaintiff asked why Fresher was not being terminated, Green allegedly told her that Fresher was "more honest."  (Id. ¶ 33.)  Plaintiff claims that when she asked Green if Fresher was going to pay Plaintiff for business acquired, Green said she "guessed so," although Claybourne had previously paid commissions to another male employee for acquiring an account.  (Id. ¶ 33.)

On December 30, 2011, Plaintiff filed a formal charge of discrimination with the Texas Workforce Commission Civil Rights Division ("TWCCRD") and the Equal Employment Opportunity Commission ("EEOC"). (Mot. at 11.)  The administrative charge asserts that, on or about July 6, 2011, Purvis told Plaintiff she would no longer be paid quarterly commissions or commissions on existing accounts; that she would not be assigned any new accounts; and that she would no longer be paid mileage.  (Id.)  The charge alleges that no male producers were affected by the policy changes, and states that Plaintiff complained about the changes to her supervisor, Green, on more than one occasion.  (Id.)  It further alleges that, on or about September 28, 2011, Claybourne took an account from Plaintiff and assigned it to another producer.  Finally, it states that Plaintiff was discharged on October 24, 2011 by Green.  (Id.)  The administrative charge concludes with the following: "I believe that I have been

5

discriminated against because of my sex, female, and for opposing unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964." (Id.)  Plaintiff received a Notice of Right to Sue on May 24, 2012 from the EEOC. (Compl. ¶ 40.)

On August 24, 2011, Plaintiff filed her Complaint with this Court. (Compl.)  Defendant filed the instant Motion on September 18, 2012 ("Mot.," doc. # 6), and Plaintiff filed a Response in Opposition on October 12, 2012 (doc. # 8). Defendant filed a Reply on October 23, 2012.  (Doc. # 9.)

STANDARDS OF REVIEW

I.      Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. The plaintiff, as the party asserting jurisdiction, bears the burden of proving that subject matter jurisdiction exists.  Choice Inc. of Tex. v. Greenstein, 691 F.3d 710, 714 (5th Cir. 2012).  A district court may dismiss for lack of subject matter jurisdiction on any one of the following bases:  "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Voluntary Purchasing Grps., Inc. v. Reilly, 889 F.2d 1380, 1384 (5th Cir.

1989).  However, "a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).

II.   Rule 12(b)(6)

        Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

DISCUSSION

Defendant seeks to dismiss Plaintiff's claim pursuant to Rule 12(b)(1) on the ground that Plaintiff failed to exhaust her administrative remedies before filing suit in federal court.  Defendant argues that, although Plaintiff filed a charge with the EEOC, she failed to satisfy Title VII's prerequisites to suit because the allegations contained within the charge differ from those alleged in the Complaint. In the alternative, Defendant argues that Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) because it is plain from the face of the Complaint that her administrative charge was not timely filed.

As a preliminary matter, the Court notes that some courts have expressed reservations about dismissing claims for failure to exhaust administrative remedies pursuant to Rule 12(b)(1).  See, e.g., Boswell v. Dep't of Treasury, Office of Comptroller, 979 F. Supp. 458, 462 n.1 (N.D. Tex. 1997) ("[T]he Court observes that . . . Rule 12(b)(1) may not represent the most appropriate vehicle for dismissing a claim on the ground that the plaintiff failed to exhaust administrative remedies.").  This is so because there is disagreement within the Fifth Circuit as to whether exhaustion is "merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction."  Pacheco v. Mineta, 448 F.3d 783, 788 n.7 (5th Cir.

8

2006) (discussing Fifth Circuit case law).  If exhaustion is merely a prerequisite to suit, failure to exhaust is not a jurisdictional defect, and dismissal under 12(b)(1) is not appropriate.  See Bailey v. Napolitano, No. 3:11-CV-1110-L, 2012 WL 1658790 (N.D. Tex. May 11, 2012) (treating non-exhaustion of administrative remedies as a failure to satisfy a prerequisite to suit).  The Court observes that the panel in Pacheco acknowledged the Fifth Circuit split on this issue but nevertheless affirmed the district court's 12(b)(1) dismissal for failure to exhaust, see Pacheco, 448 F.3d at 792, and concludes that it may address Defendant's motion pursuant to Rule 12(b)(1).  Cf. Boswell, 979 F. Supp. at 462 n.1 ("Given this lack of consistency, the Court finds that it is not precluded from addressing the issue in the context of a Rule 12(b)(1) motion.").

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2, and forbids employers from retaliating against employees for opposing unlawful employment practices, 42 U.S.C. § 2000e-3.  Before an individual may commence a civil action under Title VII in federal court, she must exhaust her administrative remedies.  See Taylor v. Books a Million, Inc., 296 F.3d 376, 378–79 (5th Cir. 2002).  Exhaustion occurs when the aggrieved employee

files a charge with the EEOC[1] and receives notice of her right to sue.  See 42

U.S.C. § 2000e-5(f)(1); see also Price v. Choctaw Glove & Safety Co., Inc., 459

F.3d 595, 598 (5th Cir. 2006).  The timely filing of a charge is, therefore, at least a

prerequisite to suit, see United Air Lines, Inc. v. Evans, 431 U.S. 553, 555 n.4

(1977), and perhaps a jurisdictional requirement, see, e.g., Tolbert v. United States,

916 F.3d 245, 247 (5th Cir. 1990) ("[I]t is the well-settled law of this circuit that

[exhaustion of administrative remedies] is a prerequisite to federal subject matter

jurisdiction.").

        The administrative exhaustion requirement exists in large part to allow

the EEOC an opportunity to investigate and resolve grievances prior to the

institution of a lawsuit.  See Alexander v. Gardner-Denver Co., 415 U.S. 36, 44

(1974) ("Cooperation and voluntary compliance . . . [are] the preferred means for

achieving [Title VII's goals].  To this end, Congress created the [EEOC] and

established a procedure whereby . . . the Commission[] would have an opportunity

---

[1] The initial charge must be filed no more than 180 days after the alleged unlawful employment practice occurred, or within 300 days if the complainant filed the initial charge with a state or local agency.  See 42 U.S.C. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.").

to settle disputes through conference, conciliation and persuasion before the

aggrieved party was permitted to file a lawsuit."); <u>Pacheco</u>, 448 F.3d at 788–89

("[A] primary purpose of Title VII is to trigger the investigatory and conciliatory

procedures of the EEOC, in attempt to achieve non-judicial resolution of

employment discrimination claims.").  An administrative charge also serves the

purpose of "providing the employer with notice of the alleged discrimination so

that they may begin to activate appropriate conciliatory measures." <u>Brown v. Dr.</u>

<u>Pepper/Seven Up, Inc.</u>, No. Civ. A. 399CV0156P, 2000 WL 370669, at *9

(N.D.Tex. Apr. 11, 2000); <u>see also</u> <u>Terrell v. U.S. Pipe & Foundry Co.</u>, 644 F.2d

1112, 1124 (5th Cir. Unit B May 14, 1981), vacated on other grounds <u>Int'l Ass'n</u>

<u>of Machinists & Aerospace Workers, AFL-CIO v. Terrell</u>, 456 U.S. 968 (1982)

(holding that administrative charge did not encompass claims against unions where

the charge did not give "even . . . informal notice" to the unions).

Consequently, "the scope of a Title VII suit [may] extend as far as, but

not further than, the scope of the EEOC investigation which could reasonably grow

out of the administrative charge." <u>Fine v. GAF Chem. Corp.</u>, 995 F.2d 576, 578

(5th Cir. 1993) (quoting <u>Terrell</u>, 644 F.2d at 1123).  Because most complaints are

initiated pro se, the courts construe administrative charges liberally, looking

"slightly beyond [a charge's] four corners, to its substance rather than its label."

Pacheco, 448 F.3d at 788–89.  A Title VII cause of action may thus "be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations."  Fellows v. Universal Rests., Inc., 701 F.2d 447, 451 (5th Cir. 1983).

Plaintiff's administrative charge alleges that Defendant discriminated against her on the basis of her sex by denying her commissions and reimbursement and refusing to assign her new accounts.[2]  (Doc. # 6 at 11.)  The administrative charge also alleges that Defendant retaliated against Plaintiff for complaining about the discriminatory treatment.  (Id.)  By contrast, in the instant action Plaintiff asserts claims for harassment, hostile work environment, and retaliation for complaining about the harassment, in addition to the claims alleged in the administrative charge: namely, disparate treatment sex discrimination and retaliation for complaining about the disparate treatment.  Therefore, this Court must answer the following question: might an investigation of harassment, hostile work environment, and retaliation for complaining about harassing behavior reasonably have been expected to grow out of the facts Plaintiff alleged in the

_____

[2]  When a party "challenges the existence of subject matter jurisdiction in fact . . . matters outside the pleadings, such as testimony and affidavits, are considered."  Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980).  Accordingly, the Court considers the administrative charge filed with the TWCCRD and the EEOC.

administrative charge?  The Court concludes that the answer is no.

To begin with, the administrative charge alleges no facts that would even suggest a claim of harassment or hostile work environment.  Cf. Pacheco, 448 F.3d at 791 (noting that the plaintiff's administrative charge alleged none of the elements of disparate impact).  In order to establish a hostile work environment claim, a plaintiff must prove that (1) she belonged to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.  Woods v. Delta Beverage Grp., Inc., 274 F.3d 295, 298 (5th Cir. 2001).  Harassment must be "severe and pervasive"; "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not rise to the level required to establish a Title VII violation.  Alaniz v. Zamora-Quezada, 591 F.3d 761, 771 (5th Cir. 2009) (quoting Shepherd v. Comptroller of Pub. Accounts of State of Tex., 168 F.3d 871, 874 (5th Cir. 1999)).  In order to be actionable, "the working environment must be objectively hostile or abusive."  Alaniz, 591 F.3d at 771 (citing Septimus v. Univ. of Hous., 399 F.3d 601, 611 (5th Cir. 2005)) (emphasis added).

It is true that harassment on the basis of sex constitutes sex discrimination, and it is true that in her administrative charge, Plaintiff complained of sex discrimination.  However, the charge consists only of facts that tend to establish a "disparate treatment" claim: in other words, that Defendant intentionally treated Plaintiff unfairly because of her sex.  See Frazier v. Garrison I.S.D., 980 F.2d 1514, 1523 (5th Cir. 1993).  The facts giving rise to Plaintiff's disparate treatment claim are wholly unrelated to the facts giving rise to her harassment and hostile work environment claims.  That harassment on the basis of sex and disparate treatment on the basis of sex are both forms of sex discrimination does not mean that a charge alleging one form of sex discrimination necessarily encompasses the other.  See Reno v. Metro. Transit Auth., 977 F. Supp. 812, 819 (S.D. Tex. 1997) (holding that plaintiff's EEOC charge alleging sex discrimination did not support a complaint for sexual harassment).  Without more "factual interrelation" between the claims, id., Plaintiff cannot contend that the claims alleged in the federal suit are "like or related to the [administrative] charge's allegations," Fellows, 701 F.2d at 451, simply because both involve sex.

Furthermore, although Plaintiff alleged retaliation in the administrative charge, the allegations do not encompass a claim of retaliation for complaining about harassment.  The narrative portion of the charge states that

Plaintiff complained to her supervisor about the changes to her contract and was

subsequently denied accounts and ultimately discharged.  (Mot. at 11.)  Nowhere is

mention made of retaliatory treatment for having disclosed harassment by

Claybourne to Nelson and Moore, as alleged in the Complaint.  (Compl. ¶ 36.)  No

language in the charge would have put Defendant or the EEOC on notice that

Plaintiff was alleging retaliation on that basis.  The allegations in the Complaint

regarding such retaliation therefore exceed the scope of the EEOC charge.  See

Stevenson v. Bost, No. 5:10-CV-487-FL, 2011 WL 2181735, at *7 (E.D.N.C. June

3, 2011) (holding that plaintiff failed to exhaust administrative remedies with

respect to her retaliation claim although she checked the corresponding box,

because the factual allegations made no mention of the retaliation later complained

of); McLeod v. Lowe's Home Improvement, No. 1:09-CV-834, 2010 WL

4366901, at *5 (N.D.N.Y. Oct. 28, 2010) (finding failure to exhaust administrative

remedies with respect to claim of retaliation for opposing disability discrimination

where administrative charge alleged only retaliation for opposing racial

discrimination).

   In response, Plaintiff argues that the Court has "ancillary jurisdiction"

over Plaintiff's unexhausted claims pursuant to Gupta v. E. Tex. State Univ., 654

F.2d 411 (5th Cir. 1981).  However, Gupta is factually distinguishable from this

case.  In <u>Gupta</u>, the plaintiff's teaching contract was not renewed after he filed a

charge with the EEOC complaining of national origin and religious discrimination.

654 F.2d at 413.  The Fifth Circuit held that it was unnecessary for the plaintiff to

exhaust administrative remedies prior to bringing a claim for retaliation based on

the non-renewal of his contract, because "the district court has ancillary

jurisdiction to hear such a claim when it grows out of an administrative charge that

is properly before the court."  <u>Gupta</u>, 654 F.2d at 414.  In this case, Plaintiff does

not allege that any acts of discrimination grew out of her administrative charge – in

other words, occurred <u>as a result</u> of her filing an administrative charge.  Thus, the

holding in <u>Gupta</u> has no application to the case at hand.

    Citing to <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101

(2002), Plaintiff also argues that because the discriminatory treatment alleged in

her administrative charge and the discriminatory treatment alleged in her

Complaint "collectively constitute[] one unlawful employment practice," she has

satisfied the exhaustion requirement with respect to all of her claims.  (Opp. at 2.)

This argument reflects a misunderstanding of the law.  In <u>Morgan</u>, the Supreme

Court held that hostile work environment claims, which by "their very nature

involve[] repeated conduct," 536 U.S. at 115, will be considered timely filed "so

long as all acts which constitute the claim are part of the same unlawful

16

employment practice and at least one act falls within" the relevant Title VII charge-filing limitations period, id. at 122.  Morgan does not stand for the proposition, as Plaintiff seems to contend, that a claimant has exhausted her administrative remedies so long as her administrative charge complains of discriminatory treatment generally.  Indeed, Morgan addressed only the timeliness of a Title VII administrative charge, not the scope.

The Court is sensitive to the fact that Plaintiff, like many complainants, filed her administrative charge pro se.  However, the value of "[protecting] unlettered lay persons making complaints without legal training or the assistance of counsel," Fine, 995 F.2d at 578, does not outweigh the need to put the EEOC and employers on notice of claims of discrimination.  See Harris v. Honda, 213 F. App'x 258, 262 (5th Cir. Dec. 12, 2006) ("The consideration given to pro se plaintiffs is not enough to outweigh the major underlying purpose of the exhaustion requirements, which is to ensure that employers have notice of claims of discrimination.").

In sum, Plaintiff's administrative charge does not allege any instances of harassment, let alone harassment sufficiently severe to create a hostile work environment, or make any mention of retaliatory treatment for having complained of harassment.  The alleged facts that form the basis of Plaintiff's disparate

17

treatment claim are entirely unrelated to the facts giving rise to her claims of harassment and hostile work environment, and retaliation for complaining of disparate treatment is equally unrelated to retaliation for complaining of harassment.  Moreover, the administrative charge states that the earliest instance of discrimination occurred on July 6, 2011.  An investigation of harassment not complained of and occurring months or even one year before the earliest asserted instance of discrimination could not reasonably have been expected to grow out of Plaintiff's administrative charge. Therefore, the Court finds that Plaintiff failed to exhaust administrative remedies with respect to her harassment and hostile work environment claims, and dismisses those claims.  The Court also finds that Plaintiff has failed to exhaust administrative remedies with respect to a claim of retaliation for opposing harassment, and dismisses her retaliation claim insofar as it is premised upon her allegation that she was retaliated against for disclosing Claybourne's harassment to Defendant's owners.[3]

---

[3]  At the hearing on the Motion to Dismiss, Defendant claimed for the first time that the retaliatory conduct complained of in Plaintiff's administrative charge was not alleged in her Complaint.  Defendant asserted that the only retaliation-related allegations in Plaintiff's Complaint deal with retaliation for opposing harassment, not for opposing the changes made to Plaintiff's contract in July 2011. Defendant argued that the Court should therefore dismiss Plaintiff's retaliation claim in full for failing to state a claim upon which relief may be granted. However, Defendant did not advance this argument in its Motion to Dismiss, and Plaintiff has not had an opportunity to respond.  The Court will not dismiss Plaintiff's retaliation claim in full based upon an argument raised for the first time

Turning to Defendant's alternative argument, the Court finds that Plaintiff's remaining claims for disparate treatment and retaliation satisfy Title VII's 300-day charge-filing requirement.  Under Title VII, aggrieved individuals must file a charge of discrimination with the EEOC no more than 300 days after the alleged unlawful employment practice occurred.  See 42 U.S.C. 2000e-5(e)(1); Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998) ("In a state that, like Texas, provides a state or local administrative mechanism to address complaints of employment discrimination, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged.").  Claims based upon an untimely administrative charge must be dismissed.  Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 476–77 (5th Cir. 1991).  Plaintiff's remaining claims are based upon alleged discriminatory acts occurring between July 6, 2011 and October 24, 2011, well within 300 days of December 30, 2011, the date Plaintiff filed her administrative charge.  (Mot. at 11.)

---

at the hearing.  Cf. United States v. Rodriguez, 602 F.3d 346, 360 (5th Cir. 2010) ("For obvious reasons, our court generally will not consider an issue raised for the first time in a reply. . . .").

19

<u>CONCLUSION</u>

The Court **GRANTS IN PART** Defendant's Motion to Dismiss (doc. # 6), dismissing Plaintiff's harassment and hostile work environment claims as well as Plaintiff's retaliation claim insofar as it is premised upon retaliation for opposing harassment.  The Court **DENIES** Defendant's Motion to Dismiss with respect to the balance of Plaintiff's claims.

IT IS SO ORDERED.

DATED: San Antonio, Texas, January 28, 2013.

_____
David Alan Ezra
Senior United States District Judge